2b 179
98 671

2bu 179
f129 31

CASE 45—PETITION EQUITY—SEPTEMBER 17.

## Robinson, &c., vs. Miller.

##### APPEAL FROM GARRARD CIRCUIT COURT.

The holder of a note for $2,500—then past due—without the knowledge or consent of the sureties to the note, in the latter part of January, 1862, agreed with the principals in the note, that, in consideration that they would give him eight per cent. interest from the time the note was due until the 1st of January, 1863, and execute their note for that amount, that he would indulge them until then, and that the principal note should not bear interest. In pursuance of this agreement, they did execute to him their note for the amount of this interest from the time the note was due until January 1, 1863. After the indulgence thus agreed upon had expired, the holder of the note brought his suit against all the parties on the original note. The sureties plead the indulgence in defense as to them. After an elaborate discussion of the whole doctrine of indulgence and forbearance, *the court held*—That the sureties were released from all liability on the note for $2,500 by the contract and agreement for indulgence without their consent; *also*, that the note for the amount of eight per cent. was only binding for the amount of six per cent., and that the sureties would have been released as well by a note for six as for eight per cent. interest, given under the same circumstances.

R. M. & W. O. BRADLEY,                    For Appellants,
                        CITED—

1 *Littell*, 121 ; *Overstreet vs. Phillips, &c.*
4 *Mon.*, 532 ; *Rudd vs. Hanna.*
3 *Bibb*, 317.
*Tomlinson's Law Dict.*, title "*Consideration.*"
2 *Bibb*, 309.
4 *Mon.*, 491 *to* 494; *Norton & Williams vs. Robards & Latham; also* 497 *to* 499.
3 *J. J. Mar.*, 525 *to* 528 ; *Sneed vs. White.*
9 *Wheaton*, 680; *Miller vs. Stewart.*

3 *Peters' Cond. Rep.*, 306.

*Wright's Rep.*, 267 ; *Crown vs. Butler.*

9 *Pick.*, 298 ; *Monroe vs. Perkins.*

11 *Pick.*, 150 ; *Robertson vs. Gardiner.*

1 *Esp.*, 35 ; *Ratliffe vs. Pendleton.*

14 *Ohio*, 348, 352 ; *McComb vs. Kitridge.*

4 *J. J. Mar.*, 367 ; *Farm. and Mech. Bank of Lexington vs. Cosby.*

3 *Dana*, 193–4 ; *Ross vs. Clore's ex'or.*

7 *B. Mon.*, 318–19 ; *Anderson vs. Mannon.*

1 *B. Mon.*, 322 to 325 ; *Tudor vs. Goodloe.*

1 *M. & P.*, 754 ; *Philpot vs. Bryan.*

1 *B. Mon.*, 325–6 ; *Kenningham vs. Bedford.*

2 *Vesey, jr.*, 542 ; *Rees vs. Pennington.*

3 *Atk.*, 94 ; *Skif vs. Hewey, &c.*

1 *Call.*, 18 ; *Boid vs. Rice.*

1 *Munf.*, 283 ; *Bullitt's ex'r vs. Winston.*

2 *Bibb*, 309 ; *Craig vs. Cox.*

3 *Bibb*, 467 ; *Jones vs. Bullock.*

2 *Johns. Ch. R.*, 560 ; *King vs. Baldwin.*

15 *Johns. Ch. R.*, 433 ; *Fulton vs. Matthews & Wedger.*

*Chitty on Bills*, 371 *to* 379.

2 *Caines' Cases in Error*, 1 ; *Ludlow vs. Simond.*

*Kirby's Rep.*, 397 ; *Deming vs. Norton.*

10 *Johns. Rep.*, 180 ; *Welch vs. Bailie.*

10 *Johns. Rep.*, 587 ; *Rathbone vs. Warren.*

3 *Dess. Ch. Rep.*, 604 ; *Burns vs. Prang's ad'r.*

2 *Dess. Ch. Rep.*, 389 ; *Rutledge vs. Greenwood.*

2 *Dess. Ch. Rep.*, 280 ; *Butler vs. Hamilton.*

3 *Binney's Rep.*, 523 ; *Comr. of Burks vs. Ross.*

6 *Binney's Rep.*, 295.

ANDERSON & TURNER,                    For Appellees

CITED—

1 *B. M.*, 322 ; *Tudor vs. Goodloe.*

7 *B. M.*, 217 ; *Anderson vs. Warren.*

7 *Cranch*, 207–8 *and note ; Biddle vs. Moss.*

14 *B. M.*, 17 ; *Halton vs. Shanklin.*

1 *Dana*, 406 ; *Todd vs. Wheeler.*

1 *Parsons on Contracts*, 511–12–13–14, *and note w to page* 512, *and note b to page* 514.

7 *B. M.*, 316 ; *Cardwell vs. Tidd.*

6 *J. J. Mar.*, 53 ; *Higdon vs. Higdon.*

2 *Met.*, 251.

JUDGE WILLIAMS DELIVERED THE OPINION OF THE COURT:

Miller having a note for $2,500 on A. J. & Thos. B. Jennings as principals, and appellants as their sureties, then past due, it was agreed, in the latter part of January, 1862, that in consideration that said A. J. & Thos. B. Jennings would give him eight per cent. interest from the time the note was due until January 1, 1863, and execute their note for this amount, that he would indulge them until then, *and that the principal note should not bear interest.* In pursuance of this agreement they did execute to him their note for the amount of this interest from the time the note was due until said January 1, 1863.

Miller waited until the time of indulgence thus agreed on had expired, and then brought his suit against all the parties on the original note. The sureties put in for defense that indulgence had been granted to their principals without their knowledge and consent, and upon a valuable consideration. The usurious interest not being paid, and not being recoverable by law, could form no legal consideration for indulgence ; but that amount of this note which would be equal to six per cent. on the $2,500, from the time it was due, was recoverable, because that much was upon a valid legal consideration; therefore, the case stands precisely as if a note for the amount of six per cent. interest on the $2,500 had been executed. '

That a mere promise to pay six per cent. interest for indulgence can be no new and valid consideration, is apparent from the fact that the debt itself draws that rate of interest from the time due ; and where no fixed time is agreed on, there is really no new contract, because the debtor only promises to pay what the law determines he shall pay ; therefore, the mere promise by the creditor to indulge, without a definite time being fixed, does not suspend his right of action for even a single day.

And this is the whole import of the cases of *Tudor vs. Goodloe*, 1 *B. Mon.*, 323, and *Anderson vs. Mannon*, 7 *B. Mon.*, 219. In both these cases the principal debt was left to bear the legal rate of interest; therefore, the additional consideration promised by the debtor, and the notes executed, were determined to be wholly usurious; hence no consideration, because not collectable; and in the latter case, the credit of $19 entered on the store account of the creditor with the debtor was regarded as not binding, because usurious, and that the debtor would have had a right to collect his store account without any regard to this credit. All this is apparent from the following extract from the opinion:

" The note for $1,500 bore interest from its maturity. There was no credit upon it, *and no provision appears to have been made that it was not to carry interest during the period of the promised delay*. It was no doubt understood by the parties that the interest upon the $1,500, and the interest provided for in the note for $67, were not both to be paid; *but still no provision was made in that view of the case*. As the note for $1,500, therefore, and the credit to Anderson for $19, were both entirely usury, the case comes clearly within the principle of the case of *Tudor vs. Goodloe*, except so far as the credit may create a distinction."

It was then adjudged that both the note for $67 and the credit on the store account for $19 were wholly usurious and not obligatory on Anderson, therefore no consideration for the promised delay, and could not, therefore, suspend the creditor's right of action on the $1,500 note. But in this case *it was agreed by Miller that the $2,500 note should not bear interest, and that, in consideration that the principal debtors would execute to him their note for an amount equal to eight per cent. interest from the time the debt was due until January 1st,* 1863, *he would indulge them on the debt until that time.* An amount equal to six per cent. of this latter note—that is, $150—is legal and collectable; and were we without judicial determination, this distinction between this case and that of *Tudor vs. Goodloe* and *Anderson vs. Mannon* would be sufficient to bring it without the principles decided therein.

Suppose the principal debtors had given their note for the principal and the interest due on 1st January, 1863, and the creditor had retained this note for $2,500, but had indorsed on it that "*A. J. & Thos. B. Jennings have this day executed to me their note for $2,650, due January* 1, 1863, *which, if paid, is to go in discharge of this note,*" or had he have indorsed on it, "*A. J. & T. B. Jennings have this day executed to me their note for the amount of eight per cent. interest on this note until January 1st,* 1863, *due at that time, in consideration of which I agree to indulge them on this note until then, and that it is not to bear interest in the meantime,*" would not the legal import be precisely the same, and would not this have simplified the case? Yet the evidence establishes precisely this latter case ; and, as it was a contract to be performed within a year, is as obligatory in parol as if in writing ; and wherein is the legal difference between agreeing to indulge on the first note but that it should not bear interest, and receiving another

note for the interest, and taking a note for principal and
interest, but retaining the first note ?   If the new note,
including the principal debt as well as the interest due
January 1, 1863, would release the surety, so would a
parol contract to indulge until that time in consideration
of the note for the interest.

In *Norton & Williams vs. Roberts & Latham*, 4 *Mon.*, 491,
this court held, that in a note for $2,500 payable at nine
months in the Branch Bank at Russellville by Morehead
as principal, and Roberts & Latham as sureties, to Nor-
ton & Williams, and after protest for non-payment, with-
out the sureties' knowledge, the creditors entered into an
arrangement with Morehead by which they gave him
sixty days, Morehead made a payment, and, in pursu-
ance of this agreement, executed his own notes, one to
Norton at sixty days for $628 50, and one to Williams at
sixty days for $789 43, being the amount of the first note
after deducting the payment, and including the accrued
interest, and also the interest for the sixty days yet to
run.   Norton & Williams indorsed on the original note
the acknowledgment of these notes, and that when paid
"*would be in full of that note*, and that the balance had
been paid by Morehead."

Norton & Williams sued on the original note, the
new notes not being paid, and Roberts & Latham filed a
bill and obtained an injunction as to themselves, claim-
ing an exoneration because of this new contract by the
creditors with their principal debtor without their con-
sent.   The court perpetuated their injunction, and this
court sustained it.

 On a petition for rehearing, it was insisted that the
debt was already due when the new contract was made,
and that neither the payment then made nor the new
notes executed by the debtor alone could form any new

consideration for the promised delay, and therefore was
not obligatory on the creditor, did not suspend his right
of action, consequently, did not prevent the sureties from
the right to pay the debt and be subrogated to the cred-
itor's rights, or to compel him to sue upon the original
note, and, therefore, was not a new obligatory contract—
a novation—and could not exonerate them.

But, in response to that petition, the court showed,
that, even in a bond debt, where the principal extended
time by simple promissory note, which, by the common
law, is a parol contract of the debtor without the knowl-
edge of the sureties, this released them.   The court said :

"If the taking of promissory notes from the principal
*for the money due by bond* did discharge the surety, *although
the bond was retained* and afterwards put in suit against
him, there is no reason for saying that the promissory
notes taken by Norton & Williams upon an arrangement
to give the principal further day for payment than that
expressed in the promissory note by which the sureties,
Roberts & Latham, were bound, shall not discharge the
sureties in this case."

And reference is made by the court to numerous Eng-
lish and American authorities; and it was a well-argued
and duly considered case, and has ever since been re-
garded as a leading case in this State.

In *Farmers and Mechanics' Bank vs. Cosby* (4 *J. J. Mar.*,
366), in which the bank held a note on Long as principal
and Cosby as his surety, after the note became due, "the
bank, in consideration of a bill of exchange drawn in its
favor by Long on a mercantile house in Orleans for the
amount due on the note, agreed with Long to extend the
credit on the note for four months.   After the expiration
of this new credit, a judgment was obtained against
Cosby on the note, the bill having, in the meantime,

been protested." The court said "the new contract essentially altered the terms and legal effect of the first, *and materially affected the rights and interest of Cosby*," and he was therefore released in equity; and the court referred to *Norton et al. vs. Roberts et al.* (4 *Mon.*, 491) as decisive.

In *Norton & Williams vs. Roberts & Latham* the new notes were payable at the same place as the old one; but a definite time was fixed, and interest for this time was included in the new notes.

In the case in 4 *J. J. Marshall* the bill of exchange was payable at a different place; but no stress is laid on this; but, from the reference to the case in 4 *Monroe*, it may be presumed the controlling facts were the giving a specified time, and the including interest for it.

The essential and controlling facts in both these cases were the new contract *for an agreed time and the agreement to pay interest for this time*. No stress is laid on the reduction to writing of the new contract in either case, nor, indeed, could it be, for this would resolve itself into a question of evidence, and whether any law requires the reduction of such contracts to writing. The new written obligations were taken as evidence of the new contract; but there is nothing in either case intimating that such contracts to be performed within a year can only be proven by written evidence, indeed, there is no such law, and parol evidence was received in both cases.

The only real difference in the facts of these cases and the one under consideration is, that a new obligation for the principal of the debts, as well as the interest for the extended time, was included in one obligation, whereas, in the present case, the principal debt is in one obligation and the interest for the extended time is in another; but to determine that this makes a material

distinction in principle is to say that the same transaction witnessed by one writing is to be determined by different legal principles than if witnessed by two writings. But this identical question has been adjudicated by numerous other States.

In *McComb vs. Kitridge* (14 *Ohio Rep.*, 351), the supreme court of Ohio, in a case in which, after the principal note was due, the principal debtor agreed with the holder, in consideration of ten per cent. interest to be paid, he would wait on the principal note until May 1, following.

It was insisted that there was no valid consideration for the agreement to extend the time from February 9 to May 1, 1837, because the $34 44 note given as the consideration of the agreement was for a rate larger than allowed by law. The court said in response to this :

" It is just as competent for the principals to a note to extend the time of payment for a specified period, as it was to fix the time of payment originally. If the lender of money, secured by a note, after the same becomes due, contracts with the borrower that the time of paying the same shall be extended for one year or for any other period, upon consideration that the borrower shall pay the legal or less rate of interest, why is it not a binding contract? *The lender, by his contract, secures to himself the interest on his money for the year, and the borrower precludes himself from getting rid of the payment of the interest by discharging the principal.* It is a valuable right to have the privilege, at any time, of getting rid of the payment of interest by discharging the principal. By this contract, *the right to interest is secured for a given period, and the right to pay off the principal and get rid of paying interest is also relinquished for such period.* But it is said there is no consideration for the extension of time, because the law

gives six per cent. after the note is due. *But the law does not secure the payment of this interest for any given period,* or prevent the discharge of the principal at any moment. *There is precisely the same consideration for the extension of time as there was for the original loan.*"

. The court proceeds to elaborate these arguments; but as these are to the point, and conclusive and unanswerable, no further quotation is necessary.

Not a case has been referred to by the counsel, nor found by a diligent search, in which a definite time was agreed on, in consideration of legal interest paid or to be paid, but what it has been upheld as a binding contract, and when made without the assent of the sureties, operated as a release to them: and these cases have been up in numerous of the States. It is deemed sufficient to refer to the following, without elaboration: *Miller vs. Sterns* (2 *Barr's Penn.*, 287) ; *Parnell vs. Price* (3 *Richd. S. C.*, 121); *People vs. McHatton* (2 *Gilman's Ill.*, 639); *Boughton vs. Bank Orleans* (2 *Barb. Chy.*, *N. Y.*, 464); *Lime Rock Bank vs. Mallett* (34 *Maine*, 549)—in some of which prepayment of interest was made, in others only promised; but in all of which it was held, that where a fixed and definite time was agreed on, the contract was binding, and the surety released because of the novation without his knowledge or consent.

In *Kenningham et al. vs. Bedford et. al.*, 1 *B. Mon*, 325, this court held, not only that the payment in advance of usurious interest was a valuable binding consideration for indulgence, but that "*the payment of legal interest in advance would have been a valid consideration for forbearance.*"

If the payment of $150 in advance would have been a valid consideration for Miller's forbearance for one year on this $2,500, why was not Jennings' note for that amount, due January 1, 1863, a valid consideration? Was not

Robinson, &c., vs. Miller.

Miller and Jennings as competent to agree that the $150 to be paid for the forbearance should not be paid until then, as they were that it should be paid in advance? The $150 was legal and collectable, and the moment the Jennings executed their note, their debt to Miller became $2,650, and they put it out of their power to discharge it at any time for less amount, as they, by giving their note for the $150, had increased their debt that much. What was the consideration to be paid by Miller for this increase of the $150? Certainly it was the promised year's indulgence on the $2,500.

Notwithstanding the note for $2,500 would have drawn six per cent., and, had it run for the year, would have drawn $150, had there been no contract, yet Jennings would have had the right, any day, to have paid off the $2,500, with its accrued interest; and had he done so in one month, the debt would only have been $2,512 50; but when this contract was made and he executed the note for $150, he precluded himself from the right at any time to discharge the debt, with its accrued interest, and by that contract bound himself to keep the money at usance until January 1, 1863, and to pay $150 therefor; and when Miller agreed that he should have it the year for that sum, and took the note for it, with the agreement that the original note should not bear interest, he entered into a binding obligatory contract, upon a valid consideration, and precluded himself from the right to demand payment or sue on the debt before January 1, 1863.

And this case, so far from conflicting with any adjudicated and authoritative case of this court, is in harmony with them all, and in harmony with all the authoritative English and American cases, without a single exception.

After January 1, 1863, Miller was entitled to accruing interest on $2,650. Why? Because his notes for $2,500 and $150 would both have borne interest, and this be-

cause both were legally due him; and being legally due him, he must abide the consideration he promised with all its consequences.

Having put himself under the legal obligation to wait until January 1, 1863, and having actually forborne for that length of time, he was entitled to recover of his principal debtors both notes, but was not entitled to ignore the smaller note and recover from the debtors and their sureties the $2,500, with accrued interest thereon, in violation of the contract; indeed, by that contract he released the sureties because of the forbearance promised and performed without their knowledge.

As was said by the Ohio court in the case cited, it was just as competent for Miller and Jennings to contract for the extension of a years' indulgence after the debt fell due, as it was in the first instance to contract for a year's time; and if they could have contracted in the first instance for a year's time by paying the legal rate of interest at the expiration of the year, so they could contract for another year's forbearance by promising to pay the same rate of interest at the expiration of the year. Indeed, it is not perceived why parties may not, for any definite time, in consideration of the legal rate of interest—as this rate is the only consideration contemplated by law—make a binding agreement, the one to let, and the other to use, the money; if this cannot be done, the borrower must always pay the interest in advance, else the lender may coerce payment at his own option, without regard to the contract time; such is neither law nor logic.

Wherefore, the judgment is reversed as to the appellants, Jacob Robinson and Balor Jennings, with directions to dismiss absolutely the plaintiff's petition against them.