CASE 108—PETITION ORDINARY—FEBRUARY 11.

# Alley v. Hopkins.

### APPEAL FROM BOYD CIRCUIT COURT.

RELEASE OF SURETIES—NOVATION.—An agreement by the payee of a note with the principal to extend the time of payment for a definite period in consideration of the payment of the interest by the principal for that period is based on a valuable consideration, and is such a novation as will release a surety in the note. But mere passive indulgence to the principal will not release the surety, although interest is paid at the end of each year, as the acceptance by the payee of interest for the preceding year does not imply an agreement upon his part not to sue for another year, and does not take from the surety the right to compel the creditor to sue at any time.

BROWN & BROWN FOR APPELLANT.

There was no such contract for indulgence as will release the sureties. (Tudor v. Goodloe, 1 B. Mon., 322; Kenningham v. Bedford, 1 B. Mon., 325; Patton v. Shanklin, 14 B. Mon., 17; Robertson v. Miller, 2 Bush, 187; Preston v. Henning, &c., 6 Bush, 560.)

JOHN F. HAGER FOR APPELLEES.

There was a consideration for the contract for indulgence, which was entered into without the knowledge of the sureties, and therefore the sureties are released. (Robinson v. Miller, &c., 2 Bush, 179; McComb v. Kittridge, 14 Ohio Rep., 351; Fawcett v. Freshwater, 31 Ohio St., 637; Rees v. Berrington, Part 2, Vol. 2, Leading Cases in Equity, Hare & Wallace's Notes.)

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

Several years prior to 1886 John Alley loaned to the firm of Hogan & Son $1,000, and upon the back of the firm's note for that sum the names of Hopkins and the other appellees appeared as accommodation endorsers.

On June 11th of the year named the form of the paper was changed, and, under the firm's name, the appellees wrote

their names as sureties.    This note was due in twelve months, and contained no provision as to interest.    On it were the endorsements, "Interest paid up to June 11, 1888," and "Interest paid up to June 11, 1889."

In November, 1889, suit was brought against the principals and judgment obtained, but it appears they had become insolvent, and, in October, 1890, this action was instituted against the sureties.

They pleaded that, for a valuable consideration, the payee had extended indulgence to the principals for a definite period and forborne to sue on the original contract; and whether or not this is true is the only question presented on this appeal.    The contention of the sureties is that the testimony shows that, upon the maturity of the note, on June 11, 1887, Hogan & Son paid Alley one hundred dollars, a like sum on June 11, 1888, and a like sum on June 11, 1889; that, upon the payment of each of these sums, Alley agreed that the firm should keep the money for another year—the consideration for the extension of credit being the payment of usurious interest, or forty dollars each year in excess of legal interest; that this was a novation and effected their discharge, or, at any rate, here was an agreement in consideration of interest to be paid by which a definite time was fixed within which the payee had lost his right to resort to his legal remedy.

It is conceded that no interest was paid in advance.    The principal agreed, when he borrowed the money, to pay ten *per centum* interest per annum, and at the maturity of the note, in June, 1887, he paid the exact sum he agreed to pay and no more.    So far, therefore, the surety is not affected. If, however, in addition to complying with its promise to pay this interest, the firm secured a valid and enforceable contract to keep the money another year—a contract which

would prevent Alley from suing for his money, or the firm
from paying it if it so desired—then the original attitude of
the parties has been changed and the sureties are released.

The proof on the particular point involved is within a
small compass, though not altogether free from confusion.
Alley is positive that the only agreement ever made was that
the Hogans were to pay him ten per cent., and that this was
paid for three successive years—each year as interest for
the preceding year—and that he made no arrangement or
agreement for any succeeding year, except to say that, if he
did not need the money, the firm might keep it by paying the
ten per cent. interest.

Hogan, Sr., upon whose testimony the sureties rely, proves
that he agreed to pay and did pay ten per cent. at the end
of each year, as interest for the preceding year, and it was
then agreed that the firm might keep the money for another
year at the same interest.  On cross-examination he states
that there was no consideration given by him, directly or in-
directly, that Alley should not collect his money whenever
he pleased.

The testimony of Hogan, Jr., the only other witness, is too
indefinite to be of any value.

It is manifest that the payment of the one hundred dollars
did not, to any extent, form the basis of the agreement to let
the Hogans keep the money for a succeeding year.  The
agreement to extend the credit for a year was solely because
of the promise of the Hogans to again pay a like sum at the
end of the extended period.  They paid this interest solely
because they agreed to do it.  It was their contract. So far,
therefore, as the various payments of interest are concerned,
the rights of the sureties are not affected, and the simple
question remains, was there an agreement to extend the

time of payment for a definite time in the future, in consideration of a promise to pay interest at the rate stated?

It is clear, however, that the rate agreed on is immaterial. So far as it was beyond the legal rate, it was usurious and the contract was not enforceable save to the extent of the legal rate. But while the note, after the first year, bore six per cent., and an agreement that that rate should be paid was no more than the law said should be paid, yet a promise to extend the time definitely, in consideration of an agreement to pay the legal rate, would be based on a valuable consideration, because, as said in McComb v. Kitridge, 14 Ohio Rep., 351, cited and approved in Robinson, &c., v. Miller, 2 Bush, 187, "the law does not secure the payment of this interest for any given period, or prevent the discharge of the principal at any moment. There is precisely the same consideration for the extension of time as there was for the original loan."

A careful examination of Hogan's testimony convinces us that the arrangement he had was a general one, commencing in 1883, when he first borrowed the money, that he was to pay ten per cent. interest at the end of each year, and was to keep the principal sum at that rate so long as he wanted it or the payee did not choose to demand it. While the witness, in his examination in chief, speaks with some positiveness of his agreement to keep the money another year, on his cross-examination he qualifies his statements by saying in one instance, "The only agreement we had, I was to pay him ten per cent. for his money," and, from his language quoted heretofore, it is manifest that there was no agreement by which the payee might not collect his money "whenever he pleased to do so."

From the testimony as a whole we are impressed with the belief that great surprise would have been expressed by all

the parties if, upon the tender of the money by the Hogans, Alley had refused to accept it by reason of any agreement that the payors were to keep it for any definite period in the future; or if Alley had demanded this principal, and the Hogans had asserted the right to keep it for any specified time. The alleged arrangement or agreement is entirely too indefinite to support the belief that we have here a case of a legal novation. We can not believe that the proof authorizes the conclusion that, by any new contract, the sureties were denied any of their rights, or were at all obstructed in any of their remedies, legal or equitable. They could have paid the debt at any moment and have been subrogated to the rights of the creditor, or they could have required the creditor to sue, notwithstanding the indefinite arrangement existing between the principal and his debtor.

In reaching these conclusions we have not overlooked the circumstances surrounding the parties to be affected. Alley was an old man—over seventy-three—and apparently unlettered. He was simply willing to let the earnings of his farm and log business stay out at ten per cent. as long as his security was good. To construe his passive indulgence into an agreement binding him not to collect his money would be a perversion of the proof as affected by the surroundings.

The debtors were quite willing to keep the money as long as they were not required to pay it, but never thought to defeat recovery at any time by the plea of an agreement to extend the credit for any definite time. At least they did not do so when sued, in November, 1889, as they might have done had such an agreement existed. The sureties were residents of the same town, and, it is fair to presume, knew the debt had not been paid. Their remedies were, in fact, unobstructed, and if they did not choose to urge the collection

of the debt they, and not Alley, must bear the resulting loss.

Judgment reversed for proceedings consistent with this opinion.